Judge STUCKY
delivered the opinion of the Court.
There was something odd about the electric razor in the bathroom. Staff Sergeant (SSgt) ME, a female Marine court reporter, noticed it sitting on the wall locker shelf in the bathroom she shared with Appellant, the senior court reporter, whom she knew to be experienced with computers and surveillance equipment. SSgt ME typically changed clothes in the bathroom and for the past year had felt that she was being watched, a feeling that she attributed to paranoia. But this time the circumstances were simply too odd and her suspicions too strong. SSgt ME took the razor with her when she left work that day. Her attempt to open the razor’s easing ended at Sears with a “Torque” T7 screwdriver. Inside the razor she found a camera.
We granted review in this case to determine two issues. First, whether the search of Appellant’s house was reasonable where Appellant objected to the search, but was not physically present when the search was conducted pursuant to his wife’s consent. Second, if, as Appellant argues, the search was unreasonable under Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), whether the inevitable discovery exception would allow admission of the seized evidence. As we find that the search was reasonable under these circumstances, we do not reach the second issue.
I. Background
Following her discovery of the hidden camera, SSgt ME contacted both the Provost Marshal’s Office (PMO) and Appellant’s wife to report the discovery. When Appellant and his wife arrived at their home that evening, they were met by military police who, after granting the wife permission to accompany Appellant, followed them to the PMO where they were placed in separate rooms.
Once in the room, agents of the Criminal Investigative Division informed Appellant of his rights under Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (2000), and Military Rule of Evidence (M.R.E.) 305. Appellant promptly invoked his right to remain silent and to consult with an attorney. When the agent questioning Appellant asked for consent to search Appellant’s home, Appellant unequivocally objected. The agent then left Appellant alone in the room. Appellant used the time to call a friend, Robert Fricke, who was a former military judge and Marine Corps judge advocate. That conversation was interrupted when the agents took Appellant’s cellular phone away and placed him incommunicado in a holding cell.
Following Appellant’s refusal to consent to a search of the home, the same agent who asked Appellant for consent asked Mrs. Weston, who was sitting in a different room, the same question. Mrs. Weston consented to the search. She did not ask whether the investigators had asked her husband to consent, and the investigators did not inform her that he had refused consent.
The search of the house Appellant and his wife lived in proceeded with Mrs. Weston present. During the search Mr. Fricke telephoned Mrs. Weston twice. The first call was to inquire as to the family’s welfare; the second was to inform Mrs. Weston that she could, and in Mr. Fricke’s opinion should, withdraw her consent to the search. Mrs. Weston did so immediately. The agents searching the home gathered up the materials they had already seized and left the home. Among those items was Appellant’s computer. A subsequent search of the computer revealed nonconsensual images of SSgt ME changing her clothes and using the bathroom. The computer also contained photos of the interior of SSgt ME’s house.
*392 II. Procedural Posture
Appellant was charged with three violations of the Uniform Code of Military Justice (UCMJ). The first two charges were for assault and housebreaking, under Articles 128 and 130, UCMJ, 10 U.S.C. §§ 928, 930 (2000). The third charge involved two specifications of invasion of privacy and one specification of wrongfully impeding an investigation. Article 134, UCMJ, 10 U.S.C. § 934 (2000). A general court-martial with members found Appellant guilty of housebreaking and of the two specifications of invasion of privacy.
Prior to trial, Appellant moved to suppress the evidence that was seized from his home. The military judge denied this motion. On appeal, a panel of the United States Navy-Marine Corps Court of Criminal Appeals (CCA) held that the search of Appellant’s home was unreasonable and violated Appellant’s Fourth Amendment rights. United States v. Weston, 65 M.J. 774, 785 (N.M.Ct.Crim.App.2007). The Government moved for a rehearing en banc. On rehearing, the CCA reversed the panel, holding that the military judge did not abuse his discretion in denying the defense motion to suppress. United States v. Weston, 66 M.J. 544, 546-47 (N.M.Ct.Crim.App.2008).
III. Discussion
Appellant argues that the search of his home was unreasonable under Georgia v. Randolph, and, therefore, the en banc CCA opinion must be overturned. We disagree. The facts of this case are distinguishable from those of Randolph, and are more like those of the cases Randolph specifically preserved.
We review a military judge’s decision to admit evidence for an abuse of discretion. United States v. Gallagher, 66 M.J. 250, 253 (C.A.A.F.2008). We review findings of fact for clear error and conclusions of law de novo. Id. at 253 (citing United States v. Flores, 64 M.J. 451, 454 (C.A.A.F.2007)).
The Fourth Amendment provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.
U.S. Const, amend. IV.
Ordinarily, warrantless entry into a person’s house is unreasonable per se. Randolph, 547 U.S. at 109,126 S.Ct. 1515. While the rule against warrantless entry is vigilantly guarded, the voluntary consent of an individual possessing authority is one “carefully drawn” exception. Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); see Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Voluntary consent to search may be obtained from the person whose property is to be searched or from a fellow occupant who shares common authority over the property. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); United States v. Gallagher, 66 M.J. 250, 253 (C.A.A.F.2008).
In Matlock, consent to search was granted by the co-occupant, who was on the premises while the defendant was detained in a police car nearby. Matlock, 415 U.S. at 166, 94 S.Ct. 988; Randolph, 547 U.S. at 109-10, 126 S.Ct. 1515. Ultimately, the Court determined that “the consent of one who possesses common authority [or other sufficient relationship] over premises or effects is valid as against the absent, noneon-senting person with whom that authority is shared.” Matlock, 415 U.S. at 170-71, 94 S.Ct. 988; see Gallagher, 66 M.J. at 253; United States v. Rader, 65 M.J. 30, 30-31 (C.A.A.F.2007). Common authority over a home extends to all items within the home, unless the item reasonably appears to be within the exclusive domain of the third party. Gallagher, 66 M.J. at 253-54 (holding that an unlocked briefcase located within an attached garage, which had been converted into a den, fell within the common authority of Appellant’s wife). Additionally, common authority can be obtained via mutual use of the property by a person with joint access or control. Rader, 65 M.J. at 33-34 (quoting *393 Matlock, 415 U.S. at 171 n. 7, 94 S.Ct. 988) (holding that a roommate with shared access to another’s computer has common authority over the computer and can grant consent to search).
Appellant wishes us to find that the search of his home was unreasonable in light of Randolph. In Randolph, the Supreme Court addressed the application of the Matlock rule where the nonconsenting occupant was “physically present” when he refused permission to search. Randolph, 547 U.S. at 109, 126 S.Ct. 1515. The Supreme Court held that express refusal by a physically present co-occupant renders a warrantless search unreasonable and invalid as to him. Id. at 106, 126 S.Ct. 1515. The specific combination of the physical presence of the cotenant at the scene, plus the cotenant’s “immediate challenge” renders the warrantless search unreasonable and invalid. Randolph, 547 U.S. at 111, 113, 126 S.Ct. 1515.
The distinction between an objection to a search lodged by a cotenant who is physically present and one who is not is a formal one, but it is the one explicitly drawn by the Supreme Court in Randolph:
If those eases [Matlock and Rodriguez] are not to be undercut by today’s holding, we have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant’s permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.
This is the line we draw, and we think the formalism is justified.
Randolph, 547 U.S. at 121, 126 S.Ct. 1515.
In his separate opinion, Judge Erdmann distinguishes a “noneonsenting” cotenant, such as Matlock (sitting in the squad car) and Rodriguez (asleep in another room), from an “objecting” one. United States v. Weston, 67 M.J. at 398 (C.A.A.F.2008) (Erdmann, J., concurring in the result). This distinction is not compelled by Supreme Court precedent, and we are unwilling to draw it. The term “noneonsenting” is general and inclusive. It encompasses all who do not expressly consent, including those who refuse, those who remain silent, and those who are not asked. Reasonableness of a warrantless search due to voluntary consent is a simple binary proposition; either there is consent or there is not. Matlock determined that a cotenant can provide consent to search, and Randolph merely laid out the limited circumstances under which a cotenant’s objection can overrule that consent.
Appellant urges us to extend the holding of Randolph and adopt the reasoning of the United States Court of Appeals for the Ninth Circuit in United States v. Murphy, where the court discounted the significance of the physical presence and immediate challenge of the party not consenting to the search. 516 F.3d 1117, 1123-24 (9th Cir.2008). Appellant further argues that we should look more generally to society’s widely shared social expectations in determining the reasonableness of consent searches. We decline to do so.
While “widely shared social expectations” underlie the reasoning in Randolph, 547 U.S. at 111, 126 S.Ct. 1515 (“The constant element in assessing Fourth Amendment reasonableness in the consent cases, then, is the great significance given to widely shared social expectations ... ”), the Supreme Court specifically declined to overrule Matlock and drew the line with the physical presence at the threshold. See id. at 120-22, 126 S.Ct. 1515. We decline to adopt the Ninth Circuit’s reasoning and thus do not expand the holding of Randolph at the expense of Matlock.
Where one party has joint access and control to a property and voluntarily consents to a search, the warrantless search is reasonable. Rather than Murphy, we find more persuasive the approach adopted by the United States Courts of Appeals for the Seventh and Eighth Circuits, which held that Randolph did not “permanently disabl[e] [a cotenant’s] shared authority to consent to an evidentiary search of her home.” United States v. Henderson, 536 F.3d 776, 777 (7th Cir.2008); see United States v. Hudspeth, 518 F.3d 954, 960-61 (8th Cir.2008).
*394 Appellant also argues that the Criminal Investigative Division (CID) agents removed him from his home in order to prevent him from voicing an effective objection to the search. Randolph recognizes an exception to its holding in cases where there is evidence “that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection.” Randolph, 547 U.S. at 121, 126 S.Ct. 1515. In such cases, a search consented to by the remaining tenant may not be reasonable. Id. In this case, however, there is no evidence that the agents removed Appellant from his home so that he could not effectively object to its search; the objection was not lodged until Appellant was at the PMO and there were no circumstances that should have led the police to anticipate it.
Here, the search was reasonable; the CID obtained consent from Appellant’s wife who possessed common authority over the premises. As in Matlock, Appellant was a non-consenting party who shared authority over the premises, but was not present to provide immediate challenge to his wife’s consent to search. The “fíne line” drawn by the Supreme Court in Randolph indicates that physical presence and immediate challenge is required for the nonconsenting tenant’s objection to nullify the reasonableness of the search. That was not the case here, thus the holding of Randolph does not apply and the search was reasonable.
IV. Decision
The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.